IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


MARVIN L. DENNIS,                                          Case No. 1:13-cv-00008-CL

               Plaintiff,

      v.

                                                    **ORDER**

AIRPORT CHEVROLET, INC.,
a domestic business corporation,

               Defendant.

_____

CLARKE, Magistrate Judge

      Plaintiff Marvin Dennis alleges that he was wrongly terminated from his job at Airport

Chevrolet, Inc., due to age and disability discrimination.  He brings claims under the Age

Discrimination in Employment Act of 1967 (ADEA) and the Americans with Disabilities Act

(ADA), as well as the corresponding statutes under Oregon state law, O.R.S. § 659A.030(a), and

O.R.S. § 659A.112.  The parties have consented to magistrate jurisdiction (#37).  The matter

comes before the Court on the defendant's motion for summary judgment (#15) on all claims.

For the reasons below, defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Marvin Dennis was employed by the defendant, Airport Chevrolet, Inc., as a certified technician for nearly twenty years, beginning in July, 1992. Plaintiff suffers from a number of impairments including an injured back, a torn meniscus and arthritis in his knee, foot neuropathy, plantar faciitis, and foot hyper pronation. In 2003, Plaintiff suffered an on-the-job back injury for which he was granted worker's compensation, and later returned to work with restrictions.

In November, 2008, Plaintiff was written up at work for the first time since his employment with the defendant began, by service manager Brian Hail, after admittedly making a mistake. Hail then issued him a "landslide of further write ups for which Plaintiff contends he should not have been written up." In September, 2010, Plaintiff was relocated to a new work station. His old work station was in close proximity to the main office, parts counter, bathroom, tool room, and lunchroom, while his new work station was the farthest station away from those places, a difference of about 50 or 60 feet.

In late November, 2011, General Motors approved a plan to merge the operations of Airport Chevrolet with another local dealership, Dollar Buick GMC. The merger created an over-staffed and physically undersized service department, requiring the newly-combined dealership to lay-off a member of the staff.

In December, 2011, the computer Plaintiff used was removed from its location across from his workstation, causing Plaintiff to walk a farther distance for access to a computer. On January 3, 2012, Plaintiff was laid off. He claims that other, younger, less qualified employees were not laid off, and that his termination was unlawful based on disability and age discrimination.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges that he was wrongly terminated from his job at Airport Chevrolet, Inc., due to age and disability discrimination. He brings claims under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA), as well as the corresponding state statutes. Defendant moves for summary judgment as to all claims.

## I.   Disability Discrimination Claims

Title I of the ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In order to prevail on an ADA claim, a plaintiff must first establish a prima facie case of discrimination by showing that he or she: (1) has or is perceived as having a disability; (2) is a qualified individual; and (3) was unlawfully discriminated against because of her disability. See e.g., Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir.1999).  The standard for establishing a prima facie case under the Oregon disability statutes is the same as under the analogous ADA provision. See Spicer v. Cascade Health Servs., Inc., 2005 WL 2211097, at *5 (D.Or. Sept. 8, 2005).

Title I ADA cases and analogous state claims are analyzed using the burden-shifting analysis from McDonnell Douglas. See e.g., Risteen v. Wal–Mart Stores, Inc., 2010 WL 1838105, at *3 (D.Or. April 30, 2010), citing Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001).   Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, (1973). If defendant does so, the burden then shifts back to plaintiff to show defendant's reason was a pretext for discrimination. Id.

### a.  Whether Plaintiff is disabled

"Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Three factors are considered in determining whether an individual is substantially limited in a major life activity:

"(1) The nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).  One must have an actual disability to fall within this definition.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 476–77 (1999).  Under the regulations, "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); see also O.R.S. 659A.104(2)(a-z).

"Substantially limited" refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular activity.  29 C.F.R. § 1630.2(j)(1)(I)-(ii); see also Thompson v. Holy Family Hosp., 121 F.3d 537, 539–40 (9th Cir. 1997).  "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(ii).  "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.  Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii).

Plaintiff claims that he is disabled based on a number of conditions including an injured back, a torn meniscus and arthritis in his knee, foot neuropathy, plantar faciitis, and foot hyperpronation.  He was granted worker's compensation for a back injury in 2003, and released to work with restrictions thereafter, which allowed him to lift ten pounds occasionally, crouch,

crawl, kneel, twist, and climb intermittently, and balance reach and push/pull occasionally. He has continued to seek medical attention for sporadic back pain, and he regularly has to modify his activity to avoid causing significant pain. At work he struggled to lift wheels and tires off of larger vehicles, move transmissions, and transfer cases. He could only perform these activities if he moved carefully and slowly to prevent aggravating his back injury. In 2008 he strained his back at work and had to take time off, and he claims that he would likely suffer such problems regularly if he did not modify his work. At home, Plaintiff struggles to lift loads of wood, cannot split larger wood on the ground, and uses a backhoe for other outside chores.

Plaintiff claims that his foot neuropathy and torn meniscus limit him from performing "several ordinary tasks" such as standing on his feet, which he claims he cannot do for a full day without taking Vicodin. He can make it through an eight hour day with Vicodin if he does not have to walk too much, but if he has to walk the pain slows him down. He no longer performs certain household chores, such as chopping and stacking wood and bringing it into the house, brushing, and weed eating. He regularly avoids going to the store, taking long walks across his property, hiking, and dirt biking, due to the pain these activities cause. He is able to ride his motorcycle, but he has to pull over and take breaks.

Clearly, Plaintiff's impairments cause him pain when he attempts to do certain activities. Some of these impairments have been medically diagnosed, such as his back injury and his torn meniscus. Plaintiff has shown that these impairments do limit his physical activities. However, taking into account the nature and severity of his impairments, their duration, and expected long-term impact, Plaintiff has not shown that he is substantially limited in any major life activity. For instance, he has not shown how far he is able to walk at one time, or how long he is able to stand without resting, or whether his pain is intermittent or chronic. Thus, regardless of whether

Plaintiff has shown that he is "disabled" in the ordinary sense of the word, he has not provided

any evidence that he is "disabled" as that term is defined by statute. See e.g., Amyette v.

Providence Health Sys., 388 F. App'x 606, 607 (9th Cir. 2010).

### b. Whether Plaintiff is regarded as disabled

"An individual meets the requirement of 'being regarded as having such an impairment'

if the individual establishes that he or she has been subjected to an action prohibited under [the

ADA] because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(A). Under

the "regarded as" prong of the ADA, a covered entity must "entertain misperceptions about the

individual—it must believe either that one has a substantially limiting impairment that one does

not have or that one has a substantially limiting impairment when, in fact, the impairment is not

so limiting." Sutton, 527 U.S. at 489; Busiere v. Providence Health Sys.-Or., 2006 WL 3827460,

at *10 (D.Or.2006). "[T]he purpose of the regarded as prong is to cover individuals rejected

from a job because of the myths, fears and stereotypes associated with disabilities." Johnson v.

Paradise Valley Unified School Dist., 251 F.3d 1222, 1229 (9th Cir. 2001); Busiere, 2006 WL

3827460, at *10. The employer "must 'regard[ ] the employee to be suffering from an

impairment within the meaning of the statutes, not just that the employer believed the employee

to be somehow disabled.'" Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3rd Cir. 2002).

In this case, Plaintiff claims that he informed his employer of his disability and his need

for accommodations, and that his employer was at the very least aware of his disability "as his

facial expressions and body language demonstrated Plaintiff's pain." Pltf. Opp. 17 (ECF #18).

However, this is not the standard for showing unlawful discrimination based on a perceived

disability. Plaintiff must show that he was regarded as being disabled, or substantially limited,

when in fact he was not. Here, by contrast, it appears that Plaintiff claims he was disabled, but that his employer did not believe him to be disabled. Plaintiff does not point to any comments made by his supervisors or other employees about his age or his physical abilities. He claims they all knew he was in pain at work, but he also claims he was able to perform all aspects of his job, so it is unclear how they might have perceived him to be disabled as defined by the statute. Plaintiff has not submitted sufficient evidence to be "regarded as" disabled by his employer.

### c. Reasonable accommodation

The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual." Willis v. Pacific Maritime Ass'n, 236 F.3d 1160, 1164 (9th Cir. 2001). The employer and employee must engage in an interactive process to determine whether the employee's disability can be accommodated. Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1111 (9th Cir. 2000). The employer's mandatory duty to participate in the interactive process "is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation." Id. at 1114. The duty also may be triggered if the employer recognizes the need for accommodation in the absence of a request from the employee. See id. at 1112. Employers who fail to engage in the interactive process in good faith "face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." Id. at 1116.5

As discussed above, Plaintiff is not disabled as defined by the statute, nor was he regarded as being disabled by his employer. However, the ADA provisions provide that that the primary object in cases brought under the statute "should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an

individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(iii). Therefore, assuming that Plaintiff is disabled under the statute, the question is whether the employer failed to make reasonable accommodations or otherwise unlawfully discriminated against him because of his impairments.

Plaintiff alleges that his supervisors knew of his back pain, torn meniscus, knee arthritis, and foot neuropathy because they were aware of his doctors' appointment, and his pain was evident on his face and well known throughout the work place. He claims that the defendant accommodated his impairments sufficiently until he was moved to a new work station, which was 50 to 60 feet away from his previous bay, and a farther distance to walk to get to other areas in the facility. When informed of the decision to move him to a new stall, Plaintiff told Mr. Hail that he was "having trouble with his feet and the extra walking concerned him." To alleviate this concern, Mr. Hail said that he could ask employees in the parts department to bring him the parts he needed, and other service technicians would help him when available. Plaintiff claims that this help never materialized, but he does not claim that he ever utilized the accommodation by asking for anyone to bring him parts, nor did he ever inform Mr. Hail, or any other supervisor, that he was not getting the help that he needed, or that his impairments were not being sufficiently accommodated.[1]

Plaintiff also requested a company computer to keep at his work station. Employees are given the option to purchase a laptop, and Plaintiff did not exercise that option, so he was

---

[1] It is unclear whether Plaintiff claims that the decision to move him to a new work bay was not only a non-accommodation of his disability, but also a discriminatory act, in and of itself. However, Plaintiff has submitted no evidence of a discriminatory motive. By contrast, the defendant has submitted evidence to show that other service technicians have been moved to different work bays for a variety of reasons and that, in this particular case, Plaintiff was moved so that a more productive service tech could use the space more efficiently. Plaintiff's supervisor also believed it would relieve some of the pressure on Plaintiff to be more productive. Plaintiff has not disputed this reasoning, except to claim that his production numbers went down, and so did the other service tech that got his previous work bay. Neither result shows that the purported legitimate reason was a pretext for a discriminatory one. Therefore, even if Plaintiff does claim the work bay decision was discriminatory, the claim fails under the McDonnell Douglas burden shifting analysis.

required to use one of three company computers. The company computers were kept in large

cabinets, and Plaintiff had to move one to his workstation in order to use it. There was a dispute

between Plaintiff and Mr. Hail about whether or not Plaintiff could keep the computer at his

station, or whether it was too big and obstructed the designated walkway. The dispute, however,

centered around the cluttered state of his workstation as well as compliance with OSHA

requirements that walkways be kept clear. Plaintiff does not point to any evidence that he asked

for the computer as an accommodation for a disability or impairment.

Therefore, other than the concern he expressed when he was moved to a new work bay,

Plaintiff does not point to any other requests for accommodation. He admits that he was capable

of performing all aspects of his job without accommodation, but he claims that he was slower

because of the extra walking he had to do to get to the bathroom, the parts department, and

dispatch. He admits that he did not request other accommodations, such as a disabled parking

permit, which would have shortened the walking distance from his car to the building. Plaintiff

has not shown that defendant refused or failed to reasonably accommodate a qualified disability

within the meaning of the ADA, and he has not shown any other adverse action taken by the

defendant can be attributed to disability discrimination.

### d. Non-discriminatory reason for termination

Even if the Plaintiff could make a prima facie case for disability discrimination, the

defendant has submitted sufficient evidence that the reason for Plaintiff's termination was non-

discriminatory. First, the merger of two local General Motors dealerships created an over-staffed

and physically undersized service department, requiring the newly-combined dealership to lay-

off a member of the staff. Second, Plaintiff's production numbers were the lowest out of all of

defendant's service technicians, a fact Plaintiff does not dispute. Additionally, the defendant

claims that the decision was bolstered by Plaintiff's poor attitude toward work, and a number of

reprimands he had received for poor performance. The defendant has submitted affidavits as

well as the written citations given to Plaintiff for poor performance, mistakes, and policy

violations. Plaintiff does not dispute that he made the mistakes, although he contends that they

were mistakes for which written reprimands were unnecessary.

Plaintiff submits explanations for his low production numbers based on his claimed

disability, namely that the move from his previous work bay caused him to be slower and less

efficient. However, low production numbers are a legitimate business reason to choose to lay-off

a particular staff member, and Plaintiff has not shown that it was a mere pretext for disability

discrimination.

## II.    Age Discrimination Claims

The Ninth Circuit analyzes ADEA discrimination cases using the framework articulated

in McDonnell Douglas. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–42

(2000) (collecting cases from other circuits); Ritter v. Hughes Aircraft Co., 58 F.3d 454, 456 (9th

Cir. 1995). Courts apply the same prima facie standard to federal and state claims for disparate

treatment, including claims arising under the ADEA. See Henderson v. Jantzen, Inc., 79 Or.App.

654, 657 rev denied, 302 Or. 35, 726 P.2d 934 (1986) (adopting U.S. Supreme Court's

formulation of prima facie case). When the district court has supplemental, rather than diversity,

jurisdiction over the state discrimination claims, the McDonnell Douglas burden-shifting

framework applies to both the federal and state discrimination and retaliation claims. Dawson v.

Entek Int'l, 630 F.3d 928, 934–35 (9th Cir.2011); see also Shepard v. City of Portland, 829

F.Supp.2d 940, 953–54 (D.Or.2011).

Under <u>McDonnell Douglas</u>, a plaintiff may establish a prima facie case of age discrimination by demonstrating that he: (1) belongs to a protected class; (2) was performing his job satisfactorily; (3) was discharged; and (4) either (a) was replaced by a substantially younger person with equal or inferior qualifications, or (b) if the plaintiff was discharged as part of a reduction of the work force, that the discharge occurred under circumstances giving rise to an inference of age discrimination. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 917 (9th Cir.1996), cert denied, 522 U.S. 950 (1997). If a plaintiff establishes a prima facie case, then the burden shifts to the defendant who must proffer a legitimate, nondiscriminatory reason for its employment decision. <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207 (9th Cir.2008).

If the defendant provides a legitimate reason for the employment action, then the plaintiff must show that the defendant's proffered reason is pretextual. <u>Diaz</u>, 521 F.3d at 1207. Pretext may be established in one of two ways: "(1) indirectly by showing that defendant's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable; or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang</u>, 225 F.3d at 1127. "When that evidence, direct or circumstantial consists of more than the prima facie presumption, a factual question will almost always exist with respect to any claim of nondiscriminatory reason," but "where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination . . . plaintiff has failed to raise a triable issue of fact." <u>Wallis</u>, 26 F.3d at 890 (internal quotations, citation, emphasis, and brackets omitted). That is, the plaintiff must do more than simply "establish a prima facie case and deny the credibility of [the defendant's] witnesses." <u>Id</u>. (citation omitted).

Plaintiff's claim rests on his belief that he was the oldest service technician in the shop, except for one Dollar GMC employee, and one other Airport Chevrolet employee, Steve Gillig,

who was let go due to low productivity. Plaintiff claims that both he and Mr. Gillig were targeted by Mr. Hail to receive less work assignments, which is why they both had low productivity. When asked, Plaintiff could not point to any comment regarding his age, or any other evidence that would lead to an inference that age was a factor in how work was assigned. His contention is merely based on the fact that he was "there," "ready to work," and "quite capable," but that the work would get assigned to other technicians. Even when pressed, Plaintiff could not remember a single age-related comment made by his supervisor, or anyone else, but insisted that his claim is based on the fact that he was given less work. This is not sufficient evidence to create an inference that age discrimination was a factor in his termination.

As with the disability claim, even if Plaintiff could establish a prima facie case of age discrimination, the defendant has submitted a legitimate and nondiscriminatory reason for his termination – low productivity and poor attitude towards work. Plaintiff has not shown that this reason was pretextual.

## ORDER

Defendant's motion (#15) is GRANTED, and this case is dismissed with prejudice.

DATED this ___24___ day of February, 2014.

_____
MARK D. CLARKE
United States Magistrate Judge